IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal No. 04-72 |
| | ) |
| LEDARRO NORTHCUTT | ) |
| | ) |
| Defendant. | ) |

<u>ORDER</u>

AND NOW, this 17th day of February, 2021, upon consideration of the motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A) of the First Step Act and § 12003 of the CARES Act (Doc. No. 134), filed by the Defendant, Ledarro Northcutt ("Northcutt"), in the above captioned matter on August 25, 2020, and in further consideration of the Government's response in opposition thereto (Doc. No. 148), filed on November 20, 2020,

IT IS HEREBY ORDERED that, for the reasons set forth below, the motion is GRANTED.  Northcutt's term of imprisonment is hereby reduced to TIME SERVED.  All other conditions of the sentence imposed on April 14, 2005, shall remain in full force and effect.  The United States Bureau of Prisons ("BOP") and United States Probation Office are instructed to facilitate Northcutt's release from custody as soon as possible.

Northcutt was convicted of possession with intent to distribute less than five grams of a mixture and substance containing a detectable amount of cocaine base, pursuant to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); possession of a firearm by a convicted felon, pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and carrying a firearm during, in relation to, and in furtherance of a drug trafficking offense, pursuant to 18 U.S.C. § 924(c)(1)(A)(i).  On April 14, 2005, he was sentenced to a term of imprisonment of 270 months and five years of supervised

1

release.  Pending before the Court is Northcutt's motion for compassionate release.[1]  Northcutt

asserts compassionate release is appropriate because he faces a serious risk of contracting

COVID-19 at the federal prison where he is serving his sentence, and that, if he does contract

COVID-19, he is likely to suffer serious illness related thereto.  He further argues that his

rehabilitation while incarcerated warrants compassionate release.  For the reasons set forth

below, the Court will grant the motion and reduce Northcutt's term of imprisonment to time

served.

Once a term of imprisonment is imposed, a district court rarely has the authority to

modify it.  18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 819 (2010).  One event

that permits modification is when a defendant moves the sentencing court for compassionate

release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391,

§ 603(b), 132 Stat. 5194, 5239 (2018).  Under the amended provision:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion
> of the defendant after the defendant has fully exhausted all administrative rights to
> appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf
> or the lapse of 30 days from the receipt of such a request by the warden of the
> defendant's facility, whichever is earlier, may reduce the term of imprisonment
> (and may impose a term of probation or supervised release with or without
> conditions that does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section 3553(a) to the
> extent that they are applicable, if it finds that—

---

[1] Northcutt also styles his motion as a request for home confinement under § 12003 of the
CARES Act.  Section 12003 of the CARES Act expands the Attorney General and Director of
the BOP's authority to use home confinement to manage emergency conditions that affect
Bureau operations, but it does not give courts the power to order home confinement.  *United
States v. Cruz*, 455 F. Supp. 3d 154, 159 (M.D. Pa. 2020) (explaining courts may not provide
relief under § 12003 because the home confinement authority therein is exclusively provided to
the Attorney General and BOP Director); *United States v. Davidson*, No. 2:16-CR-00139-2, 2020
WL 4877255, at *21 n.15 (W.D. Pa. Aug. 20, 2020).

> **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

*Id.*  Northcutt submitted a request for compassionate release to the warden at FCI-Pekin, the medium-security facility where he is serving his sentence, on April 29, 2020.  On May 5, 2020, the warden denied his request.  Because the warden at the defendant's facility received his request more than thirty days ago, Northcutt has satisfied the exhaustion requirement at § 3582(c)(1)(A), and the Court can consider the motion before it.  *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020).  The Government does not dispute Northcutt's satisfaction of § 3582(c)(1)(A)'s exhaustion provision.

Because Northcutt has met the procedural requirements of § 3582(c)(1)(A), the Court considers whether "extraordinary and compelling reasons warrant" a reduction of his sentence, and whether "such a reduction is consistent with applicable" Sentencing Commission policy statements.  *Id.*  The statute itself does not define "extraordinary and compelling reasons." Rather, Congress delegated to the United States Sentencing Commission the task of providing a definition, provided that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).  Prior to the enactment of the First Step Act, the Commission had provided such a definition in its policy statement at U.S.S.G. § 1B1.13, cmt. n.1.  There, the Commission explained that extraordinary and compelling reasons exist where: "The defendant is suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  *Id.* § 1B1.13 cmt. n.1(A)(ii).  Extraordinary and compelling reasons also include terminal illness, advanced age, family circumstances, and "[o]ther [r]easons."  *Id.* § 1B1.13 cmt. n.1(A)—(D).  The "[o]ther

"[r]easons" provision at § 1B1.13 cmt. n.1(D) is described as "an extraordinary and compelling reason other than, or in combination with, the reasons," enumerated in subsections (A) through (C).  Consistent with 28 U.S.C. § 994(t), the Commission noted that rehabilitation "is not, by itself, an extraordinary and compelling reason," warranting release.  *Id.* § 1B1.13 cmt. n.3.

Since the First Step Act's enactment, many courts have considered whether § 1B1.13 limits courts' discretion to find extraordinary and compelling reasons for a reduction in sentence.  The consensus view is that it "does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A) [sic]."  *United States v. Somerville*, 463 F. Supp. 3d 585, 594 (W.D. Pa. 2020) (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020)); *United States v. Davidson*, No. 2:16-CR-00139-2, 2020 WL 4877255 at *18 (W.D. Pa. Aug. 20, 2020); *United States v. Jones*, No. 94-CR-20079-EJD-1, 2020 WL 5359636, at *5 (N.D. Cal. Aug. 27, 2020).  Section 1B1.13 thus "provides helpful guidance," but does not limit the Court's consideration of whether extraordinary and compelling reasons warrant a reduction of the Defendant's sentence here.  *See Rodriguez*, 451 F. Supp. 3d at 397 (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019)).

Northcutt's motion for compassionate release is predicated upon the COVID-19 pandemic, his medical conditions, his risk of infection at FCI-Pekin, and the extent of his rehabilitation.[2]  In assessing the bases of this motion, the Court is mindful that the COVID-19 pandemic itself is not an extraordinary and compelling reason warranting the reduction of a sentence.  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of

---

[2] The Court construes Northcutt's pro se motion liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *Somerville*, 463 F. Supp. 3d at 596 (explaining courts have found that "generalized or speculative fear about the risk of infection" do not warrant compassionate release).  Successful movants for compassionate release whose requests are based, in part, on the ongoing pandemic, have demonstrated a unique medical or age-related vulnerability to severe illness from COVID-19, and "an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held."  *Somerville*, 463 F. Supp. 3d at 597.

The Centers for Disease Control and Prevention ("CDC") has determined that certain people are more susceptible to severe illness from COVID-19 because of their medical conditions.  *People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 3, 2021).  The CDC puts adults with medical conditions into two risk categories: those who are "at increased risk of severe illness," and those who "might be at an increased risk for severe illness."  *Id.*  Individuals who are obese fall into the former category, and those with high blood pressure, the latter.  *Id.*  Further, "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19."  *Id.* Since the onset of the pandemic, many courts have observed that obesity and high blood pressure are particularly worrying medical conditions as they relate to the risk of severe illness or death from COVID-19.  *Somerville*, 463 F. Supp. 3d at 597 ("[H]ypertension and obesity have proven to be 'the most common comorbidities' associated with increased risk of infection, grave illness, and death due to COVID-19."); *United States v. Luis Manuel Rodriguez*, 468 F. Supp. 3d 681, 686 n.3 (E.D. Pa. 2020) (distinguishing medical conditions that have not been connected to increased risk of severe illness due to COVID-19 from high blood pressure, obesity, and severe

obesity); *United States v. Hancock*, No. 3:12-CR-00015 (VAB), 2021 WL 71451, at *4—5 (D. Conn. Jan. 8, 2021) (collecting compassionate release cases wherein obesity and hypertension have been recognized as conditions putting defendants at high risk of severe illness related to COVID-19).

Northcutt, who has a Body Mass Index ("BMI") of 30.8, is obese, and, according to recent medical exams, has high blood pressure.[3]  Without more, obesity and high blood pressure would not constitute extraordinary and compelling reasons for compassionate release.  However, here there is also a non-speculative risk of contracting COVID-19 at FCI-Pekin.  In his motion, Northcutt expresses concerns related to COVID-19 prevention and containment at FCI-Pekin, citing gatherings of ten or more staff, optional mask wearing for staff, optional mask wearing for inmates working in the UNICOR facility (where Northcutt also works), irresponsible inmate transfers, movement of staff among different facilities, insufficient COVID-19 testing, lack of hand sanitizer, and failure to clean sleep apnea machines.  The Government counters with publicly available information indicating the BOP now has a mandatory masking policy, safe transfer procedures have been implemented, and testing has significantly increased in BOP

---

[3] In his motion for compassionate release, Northcutt focused on a December 2007 stabbing incident that, he says, resulted in damage to his left lung, difficulty breathing, and trouble seeing out of his left eye.  His BOP medical records do document that he has suffered from a visual disturbance as far back as 2008, but there is no confirmation among those records that the visual disturbance is related to a stabbing injury.  The only reference to a stabbing therein is a July 2020 email from Northcutt to his doctor asking for medical records related to a December 2007 stabbing incident.  Doc. No. 149-1, LN 271.  There is no indication that Northcutt received a response to that email.  Without medical records corroborating Northcutt's assertion that he was stabbed and, as a result, has difficulty breathing, the Court will not consider that alleged condition toward its extraordinary and compelling reasons determination.  *See United States v. Anthony Bernardly Jones*, No. CR 02-0778, 2020 WL 7640944, at *2 (E.D. Pa. Dec. 23, 2020) (declining to consider an uncorroborated self-diagnosis of kidney failure as an extraordinary and compelling reason for compassionate release).  However, in accord with its duty to construe Northcutt's pro se motion liberally, *Higgs*, 655 F.3d at 339, the Court does consider Northcutt's obesity and high blood pressure.

facilities.[4]  Currently, there are thirteen confirmed active COVID-19 cases at FCI-Pekin affecting

five inmates and eight staff.  *COVID-19 Coronavirus*, Fed. Bureau of Prisons,

https://www.bop.gov/coronavirus/ (last updated Feb. 16, 2021).  Therefore, while there is not, at

present, a high COVID-19 positivity rate at FCI-Pekin, Northcutt does face a concrete risk of

exposure to COVID-19, rather than the mere "possibility that it may spread" to FCI-Pekin.  *Raia*,

954 F.3d at 597.  Further, his ability to provide self-care, including social distancing, is

constrained in a prison environment.  *See United States v. Hight*, No. CR 04-333-1, 2020 WL

5653487, at *1 (E.D. Pa. Sept. 23, 2020) (noting that prisons "present numerous environmental

factors favorable to the spread of the virus").

The Court also considers the extent of Northcutt's rehabilitation in determining whether

extraordinary and compelling reasons warrant his release.  Rehabilitation, when combined with

other reasons, may—together—constitute such extraordinary and compelling circumstances.

*Rodriguez*, 451 F. Supp. 3d at 405 (explaining that the "alone" qualifier at 28 U.S.C. § 994(t)

demonstrates rehabilitation is a permissible contributor to a finding of extraordinary and

compelling reasons).  Northcutt has had much time to rehabilitate.  To date, he has served most

of his sentence, and only thirty-one months of his 270-month sentence remain to be served.

Northcutt's recent "Individualized Needs Plan – Program Review" indicates that he earned his

GED while incarcerated and has been an avid consumer of educational opportunities.  (Doc. No.

---

[4] The Government also cites Judge Brady's finding in *United States v. Wilson*, that conditions at
FCI-Pekin were not significantly "dire" at the time of that court's order.  No. 1:08-CR-67-HAB,
2020 WL 6728964, at *4 (N.D. Ind. Nov. 16, 2020).  District courts' findings as to FCI-Pekin's
ability to manage COVID-19 have been mixed. *Compare Id.*, *with United States v. Sparkman*,
No. 09-CR-0332-07, 2020 WL 6781793, at *7 (N.D. Ill. Nov. 18, 2020) (noting an
"eight-fold" case increase in just twenty days), *and United States v. Vaughn*, No. 99-CR-30068,
2021 WL 130967, at *4 (C.D. Ill. Jan. 13, 2021), *and United States v. Massat*, No. CR. 15-
50089-JLV, 2021 WL 327511, at *7 (D.S.D. Feb. 1, 2021).

134-2).  Indeed, between June 2018 and June 2020, he was almost continuously engaged in education courses.  (Doc. No. 134-2).  In the record before the Court, there is no evidence of disciplinary infractions, which is consistent with Northcutt's assertion that he has earned 912 days of good time credit.  Northcutt has worked at the UNICOR facility at FCI-Pekin since September 2019, and, after nearly a year of that work, had good work reports and a record of clear conduct.  (Doc. No. 134-2).  Together, Northcutt's risk of severe illness due to COVID-19 on account of his medical conditions, the non-speculative risk of exposure to COVID-19 where he is incarcerated, and his rehabilitation constitute extraordinary and compelling reasons warranting a reduced sentence under 18 U.S.C. § 3582(c)(1)(A), as long as the Court's consideration of the factors for sentencing at 18 U.S.C. § 3553(a) do not outweigh them.

Before ordering any reduction to Northcutt's sentence, the Court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable."  *United States v. Pawlowski*, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).  "[W]hether release is appropriate in light of the § 3553(a) factors," is "left to the discretion of the district court."  *United States v. Brown*, No. CR 13-176-4, 2020 WL 6146620, at *4 (E.D. Pa. Oct. 20, 2020) (citing *Pawlowski*, 967 F.3d at 330).  To that end, the Court considers:

> [T]he nature and circumstances of the offense; the defendant's history and characteristics; the kinds of sentences available; the need for the sentence to reflect the seriousness of the offense, promote respect for law, provide just punishment, provide adequate deterrence, protect the public from further crimes, and provide the defendant with needed correctional treatment in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

*Id.* (citing 18 U.S.C. § 3553(a)(1—2, 6)).  After careful consideration, the Court notes that while Northcutt's offense was undoubtedly serious—involving his flight from law enforcement and discovery of crack cocaine and a gun in the vehicle he abandoned—it was not violent.  It also

involved a relatively small amount of an, albeit serious, controlled substance.  At the time of his

sentencing, the Court noted that, had Northcutt not qualified as a career offender, the guidelines

range for his offense would have been 200 to 235 months.  To date, he has served all but thirty-

one months of a 270-month sentence.  The amount of time remaining on his sentence permissibly

"inform[s] whether immediate release would be consistent with [the § 3553(a)] factors."

*Pawlowski*, 967 F.3d at 331.  With his anticipated September 2023 date of release approaching, it

is the Court's considered judgment that the time he has already served sufficiently reflects the

seriousness of the offense, provides just punishment, promotes respect for the law, and

adequately deters criminal conduct.  It also avoids unwarranted disparities among similarly

situated defendants.  Looking to Northcutt's history and characteristics, the Court is persuaded

that he does not present a danger to others or to the community.  Though Northcutt had an

extensive criminal record at the time he committed the instant offense, it is evident that, during

his lengthy incarceration, he has significantly distanced himself from his fraught past.  As

recounted supra, he has taken advantage of educational opportunities, held a job without

incident, and has positioned himself to succeed upon release.[5]  Thus, having considered the

§ 3553(a) factors, the Court finds they do not counsel against reducing Northcutt's sentence.

Accordingly, the Court finds compassionate release is warranted under § 3582(c)(1)(A).

Northcutt's motion is therefore granted.

s/ Alan N. Bloch
United States District Judge

---

[5] For the same reasons the Court, considering the need to protect the community from criminal
activity under § 3553(a)(2)(C), is persuaded that Northcutt's continued confinement is not
necessary, the Court is satisfied that his release is consistent with U.S.S.G. § 1B1.13(2)
(explaining that a reduction in sentence due to extraordinary and compelling reasons is only
appropriate where "[t]he defendant is not a danger to the safety of any other person or to the
community, as provided in 18 U.S.C. § 3142(g)").

cc:    Ledarro Northcutt, Reg. No. 08092-068
       F.C.I. Pekin
       Post Office Box 5000
       Pekin, IL 61555-5000